United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

```
ORACLE INTERNATIONAL CORP,              No C 03-2267 VRW

        Plaintiffs,                     ORDER

        v

MANGOSOFT, INC, et al

        Defendants.
                                   /
```

On March 30, 2005, the court held a claim construction hearing pursuant to <u>Markman v Westview Instruments, Inc</u>, 517 US 370 (1996). Based on the parties' arguments at the hearing and their submissions to the court, the court issues the following claim construction order.

There is one patent-in-suit, relating to inventions in the field of networked computer systems, and more specifically to interrupting page delivery operations in a web environment. As the court writes principally for the parties, it will not discuss the details of the inventions or define terms well-known to those

skilled in the art, except as is necessary to construe the claims of the patents.

I

United States Patent No 6,317,790 B1 (the "'790 patent"), granted to Michael Bowker, et al, on November 13, 2001, discloses "[a] system, method, and computer readable-medium for interrupting client requests in a web environment." '790 patent, Abstract. The system includes "a server, such as a web server, for receiving a request from a particular client," but "[r]ather than directly supplying the requested information, the server determines whether unrequested operations should be performed," and if so, the server performs the operations before returning the the information requested by the client. Id.

II

The construction of patent claims is a question of law to be determined by the court. <u>Markman</u>, 517 US at 372. The goal of claim construction is "to interpret what the patentee meant by a particular term or phrase in a claim." <u>Renishaw PLC v Marposs SpA</u>, 158 F3d 1243, 1249 (Fed Cir 1998). In determining what a patentee meant by a term or phrase, the court looks first to the claim itself.

> The claims of the patent provide the concise formal definition of the invention. They are the numbered paragraphs which "particularly [point] out and distinctly [claim] the subject matter which the applicant regards as his invention." 35 USC § 112. It is to these wordings that one must look to determine whether there has been infringement. Courts can neither broaden nor narrow the claims to give the patentee something different than what he has set forth. No matter how great the temptations of fairness or policy making, courts do not rework claims. They only interpret them.

2

1  **EI Du Pont de Nemours & Co v Phillips Petroleum Co**, 849 F2d 1430,
2  1433 (Fed Cir 1988).
3      "The claims define the scope of the right to exclude; the
4  claim construction inquiry, therefore, begins and ends in all cases
5  with the actual words of the claim." **Renishaw**, 158 F3d at 1248.
6  "The words used in the claim are viewed through the viewing glass
7  of a person skilled in the art." **Brookhill-Wilk 1, LLC v Intuitive
8  Surgical, Inc**, 326 F3d 1215, 1220 (Fed Cir 2003) (citing **Tegal Corp
9  v Tokyo Electron Am, Inc**, 257 F3d 1331, 1342 (Fed Cir 2001)).
10 "Absent a special and particular definition created by the patent
11 applicant, terms in a claim are to be given their ordinary and
12 accustomed meaning." **York Prods, Inc v Central Tractor Farm &
13 Family Ctr**, 99 F3d 1568, 1572 (Fed Cir 1996).  The court may, if
14 necessary, consult a variety of sources to determine the ordinary
15 and customary meaning of a claim term, including the claim terms
16 themselves, dictionaries, the written description, the drawings and
17 the prosecution history, if in evidence. **Brookhill-Wilk 1**, 326 F3d
18 at 1220.  "Such intrinsic evidence is the most significant source
19 of legally operative meaning of disputed claim language."
20 **Vitronics Corp v Conceptronic, Inc**, 90 F3d 1576, 1582 (Fed Cir
21 1996).  With respect to dictionary definitions, "[i]f more than one
22 dictionary definition is consistent with the use of the words in
23 the intrinsic record, the claim terms may be construed to encompass
24 all such consistent meanings." **Texas Digital Systems, Inc v
25 Telegenix, Inc**, 308 F3d 1193, 1203 (Fed Cir 2002).
26     The court begins its construction of claim terms by
27 consulting intrinsic evidence of the meaning of disputed claim
28 terms, which includes the claims, the specification and the

3

prosecution history (if in evidence).  <u>Lacks Industries, Inc v McKechnie Vehicle Components USA, Inc</u>, 322 F3d 1335, 1341 (Fed Cir 2003) (citation omitted).  "If upon examination of this intrinsic evidence the meaning of the claim language is sufficiently clear, resort to 'extrinsic' evidence, such as treatises and technical references, as well as expert testimony when appropriate, should not be necessary."  <u>Digital Biometrics, Inc, v Identix, Inc</u>, 149 F3d 1335, 1344 (Fed Cir 1998).  "[I]f after consideration of the intrinsic evidence, there remains doubt as to the exact meaning of the claim terms, consideration of extrinsic evidence may be necessary to determine the proper construction."  Id.

"[A] court may constrict the ordinary meaning of a claim term in * * * one of four ways[:]" (1) "if the patentee acted as his own lexicographer and clearly set forth a definition of the disputed claim in either the specification or prosecution history;" (2) if the intrinsic evidence shows that the patentee distinguished the term from prior art on the basis of a particular embodiment, expressly disclaimed subject matter, or described a particular embodiment as important to the invention; (3) "if the term chosen by the patentee so deprives the claim of clarity as to require resort to other intrinsic evidence for a definite meaning; and (4) "if the patentee phrased the claim in step- or means-plus-function format," then "a claim term will cover nothing more than the corresponding structure or step disclosed in the specification, as well as equivalents thereto * * *."  <u>CCS Fitness, Inc v Brunswick Corp</u>, 288 F3d 1359, 1366-67 (Fed Cir 2002) (internal citations and quotation marks omitted).

Limitations from the specification, such as from the

4

1 preferred embodiment, cannot be read into the claims absent an
2 express intention to do so.  <u>Teleflex, Inc v Ficosa North Am Corp</u>,
3 299 F3d 1313, 1326 (Fed Cir 2002) ("The claims must be read in view
4 of the specification, but limitations from the specification are
5 not to be read into the claims."). But "a construction that
6 excludes a preferred embodiment 'is rarely, if ever, correct.'"
7 <u>C R Bard, Inc v United States Surgical Corp</u>, 388 F3d 858, 865 (Fed
8 Cir 2004) (citing <u>Vitronics</u>, 90 F3d at 1583).
9     With these legal principles in mind, the court now turns
10 to the construction of the disputed claim language of the patent-
11 in-suit.

### III

The parties parse the elements of '790 claims similarly, and only request the court to construe seven terms. Claim 1 of the patent is illustrative:

> 1. A method for server interruption of user requests, the method comprising the steps of:
>
> a <u>server</u> receiving a <u>request from a user</u> for a <u>particular set of information</u>, wherein preparation and delivery of said particular set of information requires a particular series of operations;
>
> in response to said request, said server collecting supplemental information about said user from a <u>server-side</u> storage unit; and
>
> Said server determining, based on said supplemental information, whether to perform one or more operations prior to supplying said particular set of information to said user, wherein said one or more operations do not alter any operation in said particular series of operations;

>                if said server determines that said one or more
>                operations should be performed, then performing
>                said one or more operations prior to supplying
>                said particular set of information to said
>                user, and
>
>                after performing said one or more operations,
>                said server replying to said user with said
>                particular set of information; and
>
>                if said server determines not to perform said
>                one or more operations, then replying to said
>                user with said particular set of information.

**1.   <u>a server</u>**

Plaintiff proposes that this term be construed as "hardware and software that provide resources to a client." Doc #33 at 6-11; Doc #37 at 2-3. Defendants propose "a computer that provides network resources to a client." Doc #36 at 7-8. Plaintiffs argue that "a computer" is unclear and vague, so "hardware and software" is more precise. But the written description of the patent directly contradicts plaintiff's argument:

>                In alternative embodiments, hard-wired
>                circuitry may be used in place of or in
>                combination with software instructions to
>                implement the invention. Thus, <u>embodiments of
>                the invention are not limited to any specific
>                combination of hardware circuitry and software.</u>

'790 patent, 3:48-54. Plaintiff's proposed construction does limit the invention to a specific combination of hardware circuitry and software, namely one where software is <u>not</u> replaced by hard-wired circuitry as contemplated and disclosed in the specification. "[T]he specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." <u>Vitrionics</u>, 90 F3d

6

1576.

Although it is true that the written description is not a substitute for the claim language, this is not the case where an unclaimed limitation from the specification is being imported into and substituted for the claim language. <u>Superguide Corp v DirectTV</u>, 358 F3d 870, 875 (Fed Cir 2004). Here, the specification expressly states that the invention should not be limited to any particular combination of hardware and/or software, which disclaims the limitation of the invention to "hardware <u>and</u> software" and thus, the court may not adopt plaintiff's proposed construction.

Despite rejecting plaintiff's proposal, the court may not simply adopt defendant's proposal carte blanche. Plaintiffs argued that "a computer" may limit servers to embodiments made of only a single computer, while it is well-known in the art that a cluster of multiple computers or multiple computer components may function as a server. Accordingly, the court modifies defendant's proposal to change "a computer" to "a computer system."

Defendants also propose that the term "network resources" be added to the construction of the term "server." But there is no mention of a network in claim 1. While defendant presented a dictionary definition in support of limiting servers to those that provide network resources, plaintiff pointed to a dictionary definition consistent with the idea that a server need not interact with network resources. "If more than one dictionary definition is consistent with the use of the words in the intrinsic record, the claim terms may be construed to encompass all such consistent meanings." <u>Texas Digital Systems</u>, 308 F3d at 1203. Clearly, a server that provides resources may also provide network resources,

7

so the court should construe this term so that both definitions are encompassed.

Accordingly, the court construes "server" as "a computer system programmed to provide resources to a client."

2.   request from a user

Defendants propose that this term be construed as "a request initiated by a person using a computer." Doc #36 at 13-15. Plaintiff asserts that there is no need to construe this term. The "user" is defined in the specification as "[having] a list of favorite activities and interests," '079 patent, 8:67-9:1. Additionally, the specification notes that it "may be desirable to have the user view the advertisement as long as possible." 9:65-66. Furthermore, at the claim construction hearing, Plaintiff's own expert declared that one of ordinary skill in the art would understand a "user" in this limitation to be person, and not software. Accordingly, the court adopts defendants' proposal and construes "request from a user" as "a request initiated by a person using a computer."

3.   particular set of information

Defendants' proposal limits "a particular set of information" to "a web page." Doc #36 at 13-15. Plaintiff alleges that there is no need to construe this term. "Absent a special and particular definition created by the patent applicant, terms in a claim are to be given their ordinary and accustomed meaning." York Prods, Inc v Central Tractor Farm & Family Ctr, 99 F3d 1568, 1572 (Fed Cir 1996). The plain meaning of "a particular set of

8

1 information" is not limited to "a web page."  Accordingly, the
2 court construes this term according to its plain meaning.

3

4 **4.   <u>server-side</u>**

5          While plaintiff proposes that there is no need to
6 construe this term, defendants argue that it should be construed as
7 "occurring on the server side of a network connection extending
8 between a client and a server."  Doc #33 at 23-34; Doc #37 at 10-
9 11; Doc #36 at 15.  Defendants' proposed construction is circular -
10 - it uses the words "server side" in combination with additional
11 unclaimed limitations to define the term "server-side."  This, they
12 cannot do, for two reasons.  First, "server" was submitted for
13 construction on its own and the addition of "-side" to any well-
14 understood term is within the realm of plain meaning.  Second, even
15 if some embodiments disclose the invention as function via a
16 network connection, the court may not import the unclaimed
17 limitation of "a network connection extending betweena client and a
18 server" into the claim.  <u>EI Du Pont de Nemours</u>, 849 F2d at 1433
19 (Fed Cir 1988).  Accordingly, the court construes this claim
20 according to its plain meaning in light of the construction of the
21 term "server."

22

23 **5.   <u>client</u>**

24          Plaintiffs propose that a "client," which first appears
25 in claim 6 of the '079 patent, should be construed as "hardware <u>and</u>
26 software that accesses resources provided by a server."  Doc #33 at
27 11; Doc #37 at 4.  Defendants propose "a computer that accesses
28 network resources provided by a server."  Doc #36 at 4.  These

United States District Court
For the Northern District of California

9

1 proposed constructions present the same challenges as the
2 constructions proposed for "server," namely, whether "a computer"
3 and "network resources" are appropriately included in the
4 construction.  Accordingly, in keeping with the analysis above for
5 the term "server," the court construes "client" to be "a computer
6 system programmed to access resources provided by a server."

8 **6.   web server**

9          Plaintiff's proposal construes this term, which first
10 appears in claim 48, as "any processor which transmits data
11 objects, applications or files to a requestor via Web protocols."
12 Doc #33 at 16-18; Doc #37 at 6-7.  Defendants argue for a more
13 limiting construction: "A server that transmits requested
14 information to a client using the Hypertext Transfer Protocol
15 (HTTP)."  Doc #36 at 11-13.  The parties' constructions diverge on
16 two main points: (1) what is a server in the context of a web
17 server and (2) what protocol or protocols must a web server
18 utilize?
19          For the first issue, plaintiffs attempt to extend the
20 definition of server to include "any processor."   Doc #33 at 16.
21 Plaintiffs, however, present no intrinsic or extrinsic evidence in
22 support of this construction.  Accordingly, the court's
23 construction of web server will use the term "server" in accordance
24 with its construction of "a computer system programmed to provide
25 resources to a client."
26          The parties' disagreement over the second issue
27 (protocols) is more difficult.  Plaintiffs propose that a web
28 server transmits information via "Web protocols," while defendants'

10

proposal requires that a web server transmits information via HTTP. At oral argument, both parties agreed that HTTP was a Web protocol, and plaintiff's counsel further agreed that HTTP is the "typical" web protocol used by web servers.  Plaintiff argued, however, that limiting a web server to using HTTP is unreasonable because one skilled in the art would know that a web server can use Web protocols other than HTTP.  Plaintiff pointed to the deposition of defendant's expert to support the notion that a web server could transmit information via Web protocols other than HTTP, such as file transfer protocol ("FTP"), etc.  Pl slides at 53.  However, in the same discussion, defendants' expert made clear that all web servers of which he was aware used HTTP.  Gray Depo at 105:18-25.  In contrast, defendants relied upon intrinsic evidence in the specification and dictionary definitions in support of their argument that at a minimum a web server must use HTTP. Def slides at 20-24.

Contrary to plaintiff's argument, limiting the construction of a web server to those that transmit information via HTTP does not preclude web servers which transmit information via other Web protocols such as FTP.  The claims at issue in the '079 patent are "open," because the preamble in each claim uses the word "comprising."  <u>Stiftung v Renishaw PLC</u>, 945 F.2d 1173, 1178 (Fed Cir 1991).  Open claims read upon any method or product that meets each element of the claims, regardless whether the accused method or product includes extra elements that are not claimed.  Id.  Accordingly, a construction of web server requiring transmission of information via HTTP merely means that in order to be a web server, the server must utilize the typical web protocol of HTTP.  Thus,

11

1  web servers that utilize additional web protocols other than HTTP
2  are not precluded by defendant's proposed construction.
3  Accordingly, the court adopts defendants' construction of "web
4  server" as "a server that transmits requested information to a
5  client using the Hypertext Transport Protocol (HTTP)."

7  **7.     web browser(s)**

8           Plaintiff proposes that this term, which first appears in
9  claim 48 of the '079 patent, should be construed as, "programs used
10 to request, decode and display information sent over the World Wide
11 Web."  Doc #33 at 13-15; Doc #37 at 5.  Defendants argue that it
12 should be construed as, "client applications that enable users to
13 request, decode and display HTML documents."  Doc #36 at 10-11.
14          Defendants rely upon intrinsic evidence from the
15 specification of the '079 patent and dictionary definitions to show
16 that a web browser must be capable of requesting, decoding and
17 displaying HTML documents.  Def slides at 27.  In contrast,
18 plaintiffs rely upon extrinsic evidence in the form of expert
19 declaration and testimony to show that a browser need not be
20 limited to requesting, decoding and displaying HTML documents.  Pl
21 slides at 59-60.
22          Although extrinsic evidence is inherently less
23 instructive on issues of claim construction than intrinsic
24 evidence, in this instance the court need not disregard plaintiff's
25 extrinsic evidence in construing the term.  As discussed above with
26 respect to "web server," the claims at issue in this patent are
27 "open" claims, and as such, claim constructions read upon all
28 embodiments that meet each claim element, regardless of extra

**12**

features.  Stiftung, 945 F.2d 1173, 1178 (Fed Cir 1991).

        Thus, defendant's proposed construction does not preclude a web browser from "using the ftp protocol to access text files," Gray Depo at 106:12-16, as long as the web browser also allows a user to "request, decode and display HTML documents."  Basically, defendant's proposed construction requires that at a minimum, a web browser must be capable of browsing the World Wide Web, which requires that the web browser be capable of requesting, decoding, and displaying HTML documents.  Accordingly, the court adopts defendants' construction and construes "web browsers" as "client applications enabling users to request, decode and display HTML documents."

        The parties are ORDERED to attend a case management conference (CMC) on June 21, 2005, at 9:00 am or on another such date that the parties may arrange with each other and the court's deputy, Cora Delfin, who may be reached at (415) 522-2039.  The parties' joint CMC statement should include a proposed schedule for dispositive motions.

        IT IS SO ORDERED.

        VAUGHN R WALKER
United States District Chief Judge